WALTER K. GEYER,

*Plaintiff and Respondent,*

vs.

N. E. TUCK, Sheriff of Laramie County, JOHN O'BRIEN and JOHN RUPPERT,

*Defendants and Appellants.*

(No. 2462; April 10th, 1951; 229 Pac. (2d) 924)

For the plaintiff and respondent the motion to dismiss was submitted upon the brief and oral argument of Ewing T. Kerr of Cheyenne, Wyoming.

For the defendants and appellants the motion to dismiss was submitted upon the oral arguments of Arthur Kline, of Kline and Kline, of Cheyenne, Wyoming.

## OPINION

BLUME, Justice.

This is an appeal from a judgment entered by the Honorable Sam M. Thompson, Judge of the First Judicial District Court of this state, releasing from custody Walter K. Geyer, the petitioner for a writ of habeas corpus. The latter was indicted by a Grand Jury in Pennsylvania. Upon requisition from the governor of that state, the governor of this state, previous to August 4, 1949, caused a warrant to be issued for the arrest of the petitioner. The latter was thereupon arrested by the Sheriff of Laramie County of this state. The petitioner filed a petition for habeas corpus and after hearing hereon, the petitioner was discharged. He was again arrested upon another warrant issued by the governor of this state. Again a petition for a writ of habeas corpus was filed on August 4, 1949 before the above mentioned judge of the district court of Laramie County. Again a hearing was had and again the petitioner was discharged. Thereupon the Sheriff of Laramie County and the person in possession of the requisition papers issued in Pennsylvania have appealed from that decision to this court. A motion was filed on behalf of the petitioner in this court to dismiss the appeal on the ground that an order entered in a proceeding of habeas corpus either discharging the petitioner or refusing to do so is not appealable.

In the case of Miskimmins vs. Shaver, 8 Wyo. 392, 401, 58 P. 411, Justice Corn expressed the opinion that: "All the authorities agree that there is no appeal from a hearing upon habeas corpus unless the right is conferred by statute." In Brugneaux vs. Dankowski, 51 Wyo. 103, 63 P. 2d 800, a case involving an extradition proceeding, we stated that "the majority, in the absence of a statute, deny the right of appeal to the state in cases in which the prisoner is discharged on habeas

corpus. * * * and we think that, in the absence of an express statute, the majority of the courts also deny the right of appeal in cases in which the petition for habeas corpus has been dismissed. * * * We think that we should give our adherence to that rule. The writ of Habeas Corpus is a high prerogative common law writ designed for the purpose of giving a speedy remedy to one who is unlawfully detained. 12 R. C. L. 1179. The very purpose of the writ will be thwarted if an appeal or proceeding in error were allowed, under the laws relating thereto." In that case the judge who heard the petition refused to discharge the prisoner, and counsel for the appellants herein argues that the rule should be otherwise when the petitioner for a writ of habeas corpus is discharged. However, we discussed the legislation on habeas corpus in this state at considerable length, found that it is today substantially as it was enacted in 1869; that this legislation is not a part of our law of civil procedure; that in view of the fact that it does not contain any provision for an appeal, the legislature must have intended that in accordance with the rule of the common law, no such appeal should lie. Hence, the real question herein is as to whether or not we should reverse the holding in that case, at least to the extent asked by counsel for the appellants. We find no impelling reason why we should do so.

In Annotation in 10 A. L. R. 386 it is stated: "The decided weight of authority is to the effect that, in the absence of statutory provision, a judgment in habeas corpus proceedings discharging a prisoner cannot be reviewed by the state or by any public officer on appeal or writ of error." Cases from numerous jurisdictions are cited. A statement to the same effect is contained in 2 Am. Juris. 922. In view of the Brugneaux case it should not be necessary to review all the decisions, but it should suffice to state the views of a few of the courts on the subject. In the case of Wyeth vs. Richardson, 10

Gray (Mass.) 240, it was held that exceptions do not lie to the discharge of a prisoner on habeas corpus. The case, as the case at bar, involved extradition proceedings originating with the governor of Iowa. The opinion of the court was written by Chief Justice Shaw, one of the well-known great jurists of this country. He stated: "The general principles of law are opposed to the allowance of exceptions in this case. The great purpose of the writ of habeas corpus is the immediate delivery of the party deprived of personal liberty. The allowance of exceptions would be inconsistent with the object of the writ. The consequence of allowing exceptions must be, either that all further proceedings be stayed, which would be wholly inconsistent with the purpose of the writ; or that the exceptions must be held frivolous, and judgment rendered *non obstante* for the discharge of the party, in which case the exceptions would be unavailing. The allowance of exceptions being thus inconsistent with the very purpose of the writ, the conclusion must be that the exceptions do not lie." In the case of State v. Morgan, 31 Ind. 66, a case also involving extradition proceedings the court held that since the legislative act relating to habeas corpus made no provision for review, the motion to dismiss the appeal should be sustained. In the case of Ex parte Williams, 149 N. C. 436, 63 S. E. 108 the court stated: "Proceedings in habeas corpus, the object of which is to release a person from illegal restraint, must necessarily be summary to be useful, and, if action could be arrested by an appeal upon the part of the state, the great writ of liberty would be deprived of its most beneficial results." In McFarland vs. Johnson, 27 Tex. 106, the court stated: "To allow appeals by the respondent from the judgment of the court discharging the applicant, would defeat the purpose of the writ as a speedy and prompt relief against illegal detention. If the judgment for the discharge of the applicant may be super-

seded by an appeal, and the writ shall only be effectual for his security after the proceeding has been reviewed in an appellate tribunal, sitting perhaps at a distant point, and holding its terms at long intervals, it may be well questioned with how much propriety we have been accustomed to boast of the writ of habeas corpus as the great palladium of personal liberty. Such a construction would render the writ, in the cases where it is the most imperatively needed, but a solemn mockery." So in the case of Ex parte White, 2 Cal. App. 726, 84 P. 242 the court said: "Having in mind the original purpose of the writ, it is difficult for us to perceive the wisdom or reason upon which statutes are based which allow an appeal in cases where the prisoner has been discharged * * *. The delay which might and generally would attend the appeal would in many cases work a denial of the very object of the writ which is to secure the present discharge of the prisoner, and in most cases the value of this bulwark of personal liberty would be so impaired as to lose the distinctive character and office with which it has been clothed ever since King John met the Barons at Runnymeade in 1215, and instead of being the safeguard of human liberty it might become a means of oppression." The late case of Ex parte Sullivan (Nev.), 189 P. 2d 338 decided in 1948 contains an exhaustive review of the subject before us. It involved an extradition proceeding just as the case at bar. The hearing pursuant to a petition for a writ of habeas corpus resulted in the discharge of the prisoner. The case accordingly is directly in point in the case at bar. The court held that no appeal lay from the order of discharge. The court concluded as follows: "We believe the prevailing or majority rule to be the better rule, because same is best calculated to assure the preservation of two of the most beneficial characteristics of the great writ of habeas corpus, namely, (1) that the liberty of one unlawfully deprived thereof

should be *speedily* restored to him, and (2) that such restoration should be *final*. To accomplish this beneficent result in the many cases in which the arrest and holding is unlawful, a rule of *general* application is required."

Counsel for appellant argues that in view of the fact that extradition proceedings such as we know them at the present time were unknown to the common law, the rule here mentioned ought not to be followed in such a case. We have above cited several cases which involved extradition proceedings and the courts made no such distinction as counsel would want us to make. As a matter of fact, Section 10-2410, Wyo. Comp. St. 1945, which is a part of the Uniform Extradition Act, provides that a prisoner arrested pursuant to extradition proceedings shall have the right to apply for a writ of habeas corpus. That necessarily implies that the incidents of such writ shall apply in extradition proceedings. It is difficult moreover to see why the rule in such a case should be different from the rule in any other case involving personal liberty.

Counsel for appellants further argues that the general rule is that an appeal lies in a case where the writ of habeas corpus is used for the purpose of determining the custody of a child; and in view of the fact that the common law rule of nonappealability does not apply in such a case, there is no particular reason for following the common law in a case of the kind before us. However, a case involving the determination of the custody of a child is sui generis. Thus in the case of Queen vs. Barnardo, 1 Queen's Bench Division (1891) 194, 204, speaking of the procedure in connection with the writ of habeas corpus, the court said: "The procedure generally and originally has been used for the purpose of bringing up persons whose liberty was alleged to be actually interfered with; but the writ has also always

been used with respect to the custody of infants, in order to determine whether the person who has the actual custody of them as children shall continue to have the custody of them as children. In such cases it is not a question of liberty, but of nurture, control and education." In the case of Barnardo vs. McHugh, Appeal Cases (1891) 388, 393, a case which involved the custody of a child, it was said by Lord Halsbury: "My Lords, I cannot entertain a doubt that there was nothing in the decision of this House in the case of Cox vs. Hakes (15 Appeal Cases 506) which is inconsistent with the right of appeal in this case. It seems to me to be clear that upon a question which is practically the guardianship of a child there is still, as there always has been, a right of appeal, and that the mere fact that the process by which that question is initiated is by writ of habeas corpus does not affect that right of appeal." It is accordingly seen that the right of appeal in such a case is based upon special grounds which have no application in the case at bar.

It follows that the motion for dismissing the appeal herein should be and is sustained. Appeal dismissed.

*Dismissed.*

KIMBALL, C. J., and RINER, J., concur.